## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ROBERT E. CANO,**

       **Plaintiff,**

v.                               **No. CIV 02-0872 LCS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed November 26, 2002 *(Doc. 10)*.  Defendant filed a response on January 6, 2002 *(Doc. 12)* and Plaintiff filed his Reply on January 22, 2003 *(Doc. 13)*.  The parties have each consented to having the United States Magistrate Judge conducting all further proceedings in this matter pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being otherwise fully advised, finds that Plaintiff's motion is not well-taken and should be **DENIED**.

## I.   BACKGROUND

    Plaintiff, now age 43, filed his current application for Social Security Disability Insurance benefits on June 1, 1998 alleging that his disability began on September 18, 1996 due to numbness

in both legs, headaches, back pain, muscle spasms, and difficulty in urinating.  R. at 53, 64.[1]

Plaintiff has a high school education or above and has work experience as a dispatcher, warehouse

man, salesman, manager, and in the military.  R. at 68, 70-75.

The Social Security Administration denied his claim at the initial level on August 21, 1998,

and at the reconsideration level on Dec. 10, 1998.  R. at 29-33; 39-41.   Plaintiff filed a request

for hearing with an Administrative Law Judge (hereinafter "ALJ") on February 9, 1999.  R. at 42.

A hearing was held before the ALJ on December 8, 1999. R. 267.  Both Plaintiff and his wife,

Angela Cano, testified on his behalf.  *Id.*

The ALJ issued his decision on April, 27, 2000.  R. at 14-24.  Thus, the ALJ concluded

that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.*

Plaintiff filed a request for review of the ALJ's decision on June 19, 2000.  R. at 10.  He

submitted a letter and additional evidence to the Appeals Council. R. at 9.  On September 11,

2001, the Appeals Council, after considering the letter and the additional evidence, denied the

request for review.[2]  R. at 7-8.  Hence, the decision of the ALJ became the final decision of the

Commissioner for judicial review purposes.  On November 26, 2002, Plaintiff filed this action,

seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

---

[1]        The ALJ noted that Mr. Cano had applied for disability insurance benefits twice
before, in April 1995 and in December 1997. R. 15.  Both applications were denied and Mr. Cano
did not pursue his administrative remedies.  *Id.*   Although Mr. Cano had not requested reopening
of his prior applications, the ALJ nevertheless considered all of the evidence submitted in
connection with all three of his applications for disability benefits, and concluded that the evidence
of the record did not support a determination of disability at any time since Mr. Cano first injured
his back in 1994. R. 15.  The ALJ thus found no basis in the record to reopen the Plaintiff's prior
applications.  *Id.*

[2]        Mr. Cano also submitted a copy of his letter to Congressman Joe Skeen, whose
office also forwarded the letter to the Commissioner.  R. at 263-266.

Compl. ¶¶ 1-3.

## II.   STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999);  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits or supplemental security income, a plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the plaintiff from engaging in substantial gainful activity.  *Thompson*, 987 F. 2d at 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(A)).  At the first four levels of the sequential evaluation process, the plaintiff must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the plaintiff is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  *Id.*

## III.   ANALYSIS

The ALJ found, at step one of the sequential analysis, that Mr. Cano met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act on September 18, 1996, the date which Plaintiff alleges he became disabled, and was not engaged in substantial gainful activity since that date.  R. 23.   The ALJ found that Plaintiffs impairments, including a mild bulging disc in his lumbar spine at L4-5[3], chronic low back pain syndrome, and a psychological condition constitute "severe" impairments. R. 23-24.  The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments.  R. 24.  The ALJ concluded that Plaintiff's allegations regarding his limitations were not totally credible. *Id.*  At step 4, the ALJ found that Plaintiff's impairments prevented him from doing his past relevant work.  *Id.*  The ALJ found that Mr. Cano, a younger individual as defined by the applicable regulations, with a high school education, where transferability of skills was not an issue in this case, retained the capacity for a wide ranger of sedentary work with minimal nonexertional limitations.  R. 24.  The ALJ applied  Rule 201.28 of the Medical-Vocational Guidelines and found that Mr. Cano was not disabled. *Id.*

In his Motion and Memorandum in Support of his Motion to Reverse or Remand, Plaintiff

---

[3]        Lumbar relates to the part of the back and sides between the ribs and the pelvis. *See* STEDMAN'S MEDICAL DICTIONARY 998 (26th ed. 1995). L is an abbreviation for lumbar. *Id.* at 926.

did not enumerate his claims of error on the part of the ALJ. However, having carefully reviewed Plaintiff's Memorandum and Reply, it is apparent that Plaintiff claims that the ALJ erred in four respects: first, in failing to adequately develop the record by allowing Plaintiff to address any alleged inconsistencies or by failing to make a report of a counselor from 1998 a part of the file; second, by incorrectly evaluating Plaintiff's bladder/kidney condition; third, by incorrectly evaluating the impact of Plaintiff's mental problems in determining Plaintiff's residual functional capacity ("RFC"); and fourth, by application of the GRIDS in finding the Plaintiff not disabled.

**A.      Whether the ALJ failed to adequately develop the record.**

The Plaintiff claims that the ALJ failed to adequately develop the record. The burden to prove disability in a social security case is on the Plaintiff. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). However, because a Social Security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993). As such, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The degree of effort required by the ALJ to develop the record varies from case to case. Cf. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed record must be determined on case by case basis); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983).

The Plaintiff "has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the Plaintiff has satisfied his

5

or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order

a consultative exam. *Hawkins v. Chater*, 113 F.3d at 1166-67. The ALJ is not required to

exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning.

*Hawkins*, 113 F.3d at 1168 (citing generally, *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir.

1994)). The applicable standard is that "of reasonable good judgment. The duty to develop the

record is limited to 'fully and fairly developing the record as to material issues.'" *Hawkins*, 113

F.3d at 1168 (citing *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th

Cir. 1993)). In the instant case, a consultative examination was performed by N. Nillo, M.D., in

August 1998 at the request of the Commissioner. R. 18, 109-113.

> **1.      Whether the ALJ erred in failing to make a 1998 report from the VR
> counselor a part of the record.**

Plaintiff argues that the ALJ failed to adequately develop the record by failing to make a

report of a counselor from the Vocational Rehabilitation and Counseling Division of the VA from

1998 a part of the file. In his decision, the ALJ noted that Mr. Cano "apparently applied for

vocational rehabilitation services," referring to a letter from the Vocational Rehabilitation and

Counseling Division, which referenced a report from a contract counselor concerning an

application for vocational rehabilitation. R. 17. While the ALJ remarked that "[i]t would be

interesting to review the report of the counselor who took Mr. Cano's application for

rehabilitation, but that document is not made a part of the file," the ALJ did not rely upon the

information provided in the letter from Terry K. Sauderlin, Ed.D., a counseling psychologist with

the Vocational Rehabilitation and Counseling Division. The letter from Ms. Sauderlin, moreover,

only indicated receipt of the report and did not discuss the content of the report, other than noting

that the report stated that Mr. Cano "did not have any specific interest in vocation at this time.".

R. 63.  The record does, however, contain extensive materials from the VA, and contains

sufficient information for the ALJ to have made his determination.  The record contains

information from Plaintiff's Medical Evaluation Board Proceedings, including the results of

Plaintiff's nerve conduction studies (R. 93-97),  reports generated from Plaintiff's Compensation

and Pension Examinations (R. 98-108) and  Plaintiff's records of treatment at William Beaumont

Army Medical Center and from the VA in Albuquerque (R. 114-152, 224-252), including records

from Plaintiff's pain management and behavioral modification treatment (R. 141, 177, 181-82,

184-85, 191-96, 230- 242).   The ALJ met the duty "of reasonable good judgment" to "fully and

fairly develop[] the record as to material issues."  *Hawkins*, 113 F.3d at 1168 (citing *Baca v.

Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).  The ALJ thus did

not err in failing to make the report of the contract vocational counselor from 1998 a part of the

record.

> **2.      Whether the ALJ erred in failing to permit Plaintiff to address
>           inconsistencies in the record.**

Plaintiff further alleges that the ALJ erred by failing to permit Plaintiff the opportunity to

address inconsistencies in the record.  In evaluating the record, the ALJ noted that "Mr. Cano has

given widely varying account of his work history." R. 15.   The ALJ further noted that "[t]here

are unexplained events in Mr. Cano's medical records," referring to 1995 treatment received at

Memorial Medical Center in Las Cruces for pain in his back and numbness in his legs after a

motor vehicle accident in February 1995.  R. 16.  The ALJ noted, and the record indicates that

Mr. Cano never reported this accident to any of his treatment providers with the VA, even during

his evaluation for veteran's disability benefits. *See, e.g.,* R. 16.   The ALJ also noted that Plaintiff's physical complaints have varied, as having his reports as to his activities, his education, his functional limitations, and his work history.  R. 21.

"Credibility determinations are peculiarly the province of the finder of fact, [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In determining the credibility of pain testimony, the ALJ can weigh and evaluate numerous factors including,  "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the plaintiff and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."  *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).   Moreover, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."*Id*. at 1133.

In this case, the ALJ  adequately linked his credibility finding to the record, specifically enumerating the many inconsistencies between Plaintiff's complaints and medical evidence in the record.  The ALJ, in noting such inconsistencies, properly evaluated the "subjective measures of credibility that are peculiarly within the judgment of the ALJ" and his credibility determination is supported by substantial evidence.  *See Huston*, 838 F.2d at 1132; *see also, Diaz*, 898 F.2d at 777.

Plaintiff's claim that the ALJ should have permitted him the opportunity to address the inconsistencies in the record ignores the fact that the evaluation of such inconsistencies, essential

to a determination of credibility, is within the province of the fact-finder – in this instance, the ALJ. *Diaz*, 898 F.2d at 777.  Moreover, the ALJ provided Mr. Cano with the opportunity to make further argument, request a supplemental hearing, and otherwise expand the record, when the ALJ notified Plaintiff by letter dated February 7, 2000 that he had secured additional evidence which he proposed to enter into the record.  R. 46.  In his letter, the ALJ notified Plaintiff that he could submit written comments concerning the evidence, a written statement as to the facts and law Mr. Cano believed to apply to the case in light of that evidence, and any additional records the Plaintiff wanted the ALJ to consider.  *Id*.  Plaintiff was notified that he could request the opportunity to question witnesses, have a supplemental hearing, and request a subpoena to require the attendance of witnesses or the submission of records.  *Id*.  The record does not indicate that Plaintiff availed himself of this opportunity.[4]

Plaintiff correctly noted that  "[a] Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)( citing *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) and  *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)(Brennan, J., concurring)).  The ALJ's duty to develop the record is heightened when a claimant is unrepresented. *Id*. (internal citations omitted). However,  Mr Cano's *pro se* status does not, in and of itself, mandate a reversal. *Id*. The relevant question is "whether the ALJ asked sufficient questions to ascertain (1) the nature of

---

[4]       After receiving the unfavorable decision, Mr. Cano did, however, write a letter to the Appeals Council (R. 251-57), in which Plaintiff addressed the various findings of the ALJ. The Appeals Council considered Mr. Cano's letter, as well as an additional urology clinic medical report, as additional evidence, "but concluded that neither the contentions nor the additional evidence provides a basis for changing the Administrative Law Judge's decision."  R. 7-9.

a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Musgrave*, 966 F.3d at 1375 (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)).  The transcript of the hearing demonstrates that the ALJ solicited testimony from the Plaintiff on each of these issues. *See, e.g.,* R.282-85 (nature of alleged impairments); 282-286, 294 (on-going treatment and medication); and 282-291, 292-294, 295-303 (impact of impairments).

Like the claimant in *Musgrave,* the record indicates that Mr. Cano understood and effectively responded to the ALJ's questions. *Musgrave*, 966 F.2d at 1375;  See *generally,* R. 283-295.  The ALJ performed  "basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Musgrave*, 966 F.2d at 1374 (internal citations omitted) and met the heightened standard to develop the record applicable where a claimant is unrepresented.  *Id.*   The ALJ thus did not err by  failing to permit Plaintiff the opportunity to address inconsistencies in the record.

**B.**      **Whether the ALJ erred in evaluating Plaintiff's bladder impairment**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's bladder impairment.  The ALJ noted that Mr. Cano's doctors "have attributed his urinary complaints to recurrent prostatitis."  R. 17.  The ALJ further noted that the medical records show that Plaintiff had a flare-up of that condition in August 1998, which resolved with treatment, that Plaintiff underwent a cytoscopy in June 1999, the results of which were consistent with mild prostatitis and were otherwise essentially normal. *Id. See also,* R. 197-204.   Plaintiff specifically takes issue with the ALJ's statement that Plaintiff "told the psychologists who interviewed him that his back injury had also

10

resulted in damage to his kidney and bladder" and "[t]his assessment is apparently Mr. Cano's own."  R. 17.

The ALJ noted that "the important point is that [Mr. Cano] has failed to identify any limitations arising from this condition."  R. 18.  Plaintiff repeatedly indicated that he has bladder problems, but did not indicate any functional limitations caused by his urinary problems anywhere in the record.  *See, e.g.,* Disability Report (R. 64-75), Daily Activities Questionnaire (81-87), Plaintiff's letter to ALJ dated February 19, 2000 (R. 213-214), Plaintiff's letter to Appeals Council dated June 19, 2000 (R. 254-257), testimony of Plaintiff before ALJ (R. 264-304).

Plaintiff's medical records indicate that he has reported that he has symptoms of prostatitis[5] every few months, treated by doxycyline[6] as needed.  R. 123.   A letter from R.W. Woodruff, M.D. indicates that Mr. Cano has evidence of chronic prostatitis which became apparent in 1994, which is seriously symptomatic.  R. 176.  Dr. Woodruff also noted some "bladder disfunction [sic] the ediology [sic] of which is not clear."  Plaintiff's medical records indicate that he "has had recurrent prostatitis" which responds to doxyclycline, and "keeps a prescription for doxycycline handy in case the prostatitis flares up."  R. 120, 185.  Plaintiff's record indicate that his symptoms include complaints of nocturia[7], hesitancy, urgency, double

---

[5]     Prostatitis is an inflamation of the prostate.  STEDMAN'S MEDICAL DICTIONARY 1441 (26th ed. 1995).

[6]     Doxycycline is a tetracycline antibiotic used to treat bacterial infections, as well as for other purposes. STEDMAN'S MEDICAL DICTIONARY 519 (26th ed. 1995).

[7]     Nocturia is defined as urinating at night.  STEDMAN'S MEDICAL DICTIONARY 1213 (26th ed. 1995).

voiding, straining, intermittency, dysuria,[8] and hematuria[9].  R. 185.

A review of the record indicates that neither Plaintiff nor his physicians have indicated any functional limitations because of his bladder impairment.  The ALJ did not assert "that Mr. Cano made up this impairment," as argued by Plaintiff.  Rather, ALJ noted that Plaintiff's bladder complaints, generally identified as recurrent prostatitis in his medical records, have flared-up in the past, and has been controlled with treatment.  R. 17.  The ALJ correctly concluded that "[t]here is no evidence to support a finding that Mr. Cano has limitations in his ability to perform work activities because of prostatitis."  R. 16.  This finding is supported by substantial evidence in the record.  The ALJ thus did not err in his evaluation of Plaintiff's bladder impairment.  *See* 20 C.F.R. § 404.1521.

## C.   Whether the ALJ erred in evaluating the impact of Plaintiff's mental impairment on Plaintiff's RFC

Plaintiff argues that the ALJ erred in evaluating the impact of Plaintiff's mental impairment on his residual functional capacity ("RFC").[10]  The ALJ noted that Plaintiff has a "mental impairment that has a significant effect on his medical condition" R. 16.  The ALJ found Mr. Cano's back problems and mental impairment constituted a "severe" impairment under 20 C.F.R. 404.1520(c)).  *Id.*

In his opinion, the ALJ noted that "[t]here is evidence of record that Mr. Cano's

---

[8]      Dysuria is defined as difficulty or pain in urination.  STEDMAN'S MEDICAL DICTIONARY 537 (26th ed. 1995).

[9]      Hematuria is defined as any condition in which the urine contains blood or red blood cells.  STEDMAN'S MEDICAL DICTIONARY 773 (26th  ed. 1995).

[10]     In his letter to the Appeals Council dated June 19, 2000, Plaintiff specifically denied that he has a "mental impairment."  R. 256.

subjective physical complaints are psychogenic, i.e., that there are psychological factors affecting his medical condition." R. 15-16.   A Psychiatric Review Technique Form completed by the ALJ evaluated Plaintiff's mental impairment under Listing 12.07 Somatoform Disorders of the Listing of Impairments.  *See* R. 25-27.  The form indicates the presence of psychological factors affecting medical conditions. R. 26.  In rating the impairment severity, the ALJ noted only slight functional limitations in restrictions of activities of daily living, in maintaining social functioning and no deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner R. 26.  The ALJ further noted no episodes of deterioration or decompensation in a work or work-like settings which caused the Plaintiff to withdraw from that situation or experience exacerbation of signs and symptoms.  R. 27  Dr. Nillo, the Consultative Examiner ("CE"), noted that "the claimant's symptoms far exceed the objective findings at the time of this exam and that there was presence of indications of symptom magnification. . . ." R. 18.

The ALJ compared an April 1997 evaluation by a VA psychiatrist[11] with a November 1998 evaluation by VA behavioral medicine psychologists, who treated Mr. Cano for pain management.  R. 19-20.  The ALJ noted that the older evaluation, which assigned Plaintiff a Global Assessment of Functioning ("GAF")[12]  score of 45, was more severe than  would be suggested by the CE's findings and Mr. Cano's subjective complaints.  R. 20.   The ALJ found

---

[11]     Mr. Cano was evaluated by Virginia Villepointeaux, M.D., in conjunction with  his VA disability determination.  R. 103-104.   Dr. Villepointeaux diagnosed Plaintiff with "adjustment disorder with mixed emotional features secondary to chronic pain and frustration over being unable to find health care since getting out of the Amy."  *Id*.  Dr. Villepointeaux nevertheless found no diagnostic tests necessary.  *Id*. at 104.

[12]     A GAF score indicates the individual's "psychological, social, and occupational functioning."  *Diagnostic and Statistical Manual of Mental Disorders* (American Psychiatric Press, 4th ed. 1994) n. 13 at 30 ("DSM-IV").

that the more recent evaluation, which assigned Mr. Cano a GAF score of 58, "is much more consistent with the findings reported as well as other evidence of record."  R. 20.

However, the ALJ noted that "having carefully considered all of the evidence concerning the effects of Mr. Cano's psychological impairment, I have determined that the State agency psychologist who reviewed the file in December 1998 did not take into account the effect his mental impairment has on his physical condition."  R. 20.  The ALJ noted that Mr. Cano's pain "has a significant effect on his ability to perform basic work activities," and thus defined Plaintiff's mental impairment as "severe" under 20 C.F.R. § 404.1521.   The ALJ therefore examined Plaintiff's complaints of pain in light of the medical record.

"Disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."  *Gossett*, 862 F.2d at 807.  The ALJ noted that Plaintiff's subjective complaints of pain have grown, although the objective findings of his various physicians do not indicate that Mr. Cano's physical condition has worsened.    R. 21.  The ALJ noted that because Plaintiff's mental condition may have affected his pain, perceptions of pain, and limitations imposed by pain, the ALJ "considered more than the medical evidence of physiological injury in determining whether Mr. Cano's pain is reasonably related to a medically determinable impairment." R. 21.  Plaintiff has stated that he "can't do anything because of pain" (R. 88). Although Plaintiff's medical records are replete with his subjective complaints of pain, the record does not reflect that Plaintiff's medical and psychological treatment providers noted any significant objective limitations on his activities.  An October 24, 1995 recommendation, made in conjunction with Plaintiff's Medical Evaluation Board Proceedings states that Mr. Cano's

limitations include lifting greater than fifteen pounds, running or jumping, no push-ups or sit ups, and further provided that he could walk for his Army Physical Fitness Test.  R. 94.   The Board recommended that Plaintiff "do desk work as tolerated."  *Id*.

Plaintiff has been treated with medication and other forms of therapy for pain, including TENS, pool therapy, and behavior modification.  *See, e.g.,* 141, 181-184, 190,  Plaintiff has repeatedly reported an increase in his pain.  *See, e.g.*, R. 131, 132, 143, 145, 189, 190. Plaintiff's VA records from November 9, 1998 indicate that Plaintiff was told that his doctors did not have anymore further to offer in the way of medical treatment, and suggested psychological forms of pain management.  R. 118.   Despite the voluminous record, neither Plaintiff's various treatment providers, nor the CE have not indicated any greater limits on his residual functional capacity than those noted in his conjunction with his Medical Evaluation Board Proceedings.  A Physical Residual Functional Capacity Assessment completed by non-treating, non-examining physicians based upon the evidence in the file on August18, 1998 and December 9, 1998, concluded that Mr. Cano could occasionally lift 20 pounds; frequently lift 10 pounds,; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour workday; found no limitation on pushing or pulling; found that Plaintiff was limited to occasionally climbing, balancing, stopping kneeling, crouching, and crawling; and found no manipulative, visual communicative, or environmental limitations.  There is nothing in the medical record, beyond Plaintiff's subjective complaints, to indicate that Plaintiff's pain or mental impairment limited his residual functional capacity beyond that noted by the VA in 1995, by the non-treating reviewing physicians in 1998, by the CE, and accepted by the ALJ.  In recommending that Plaintiff participate in hydrotherapy and pool therapy, Donald Stehl, M.D., Plaintiff's treating physician, stated in a letter dated June 30, 1998,

15

"[t]here are no contraindictions and he may participate in all activities as tolerated."  R. 177.

The ALJ properly evaluated Plaintiff's mental impairment in determining his residual functional capacity.  The ALJ considered Plaintiff's subjective complaints of pain, and the objective medical findings in the record, and correctly noted that the record demonstrates no limitations on Plaintiff's ability "to perform mental activities as a result of his mental impairment, only those that arise from his subjective complaints of physical pain" R. 22.   The ALJ found that Mr. Cano retains the residual functional capacity for a wide range of sedentary work.  R. 22. This finding is consistent with the limitations placed on him during his Medical Board proceeding in 1995, and is supported by substantial evidence.    The ALJ thus did not err in evaluating the impact of Plaintiff's mental impairment on his residual functional capacity.

**D.    Whether the ALJ erred in application of the Medical-Vocational Guidelines (the GRIDS) in determining that Plaintiff was not disabled.**

Plaintiff alleges that the ALJ erred in application of the GRIDS in determining that Plaintiff was not disabled.  The GRIDS are

> matrices of the four factors identified by Congress--physical  ability, age, education, and work experience--and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. The grids thus may provide a shortcut in certain circumstances to determining whether a claimant can perform other work by obviating the need for a vocational expert's testimony.

*Daniels v. Apfel, 154 F.3d 1129, 1132* (10th Cir. 1998) (quotations and citations omitted).

Generally, the GRIDS may not be used conclusively if the claimant has nonexertional impairments that limit the ability to do the full range of work within a classification. *See Sullivan v. Thompson,* 987 F.2d 1482, 1488 (10th Cir. 1993); see also 20 C.F.R. § 404.1569a(c)(2) (stating that "if your impairment(s) and related symptoms, such as pain, only affect your ability to perform the

nonexertional aspects of work-related activities, the [GRIDS] do not direct factual conclusions of disabled or not disabled"). However, they may be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base. *See Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995). Only significant nonexertional impairments limit the claimant's ability to do the full range of work within a classification. *See Thompson*, 987 F.2d at 1488. Moreover, automatic application of the GRIDS is appropriate only when a claimant's residual functional capacity, age, work experience, and education precisely match a GRID category. *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988)(citing *Heckler v. Campbell*, 461 U.S. at 462 n.5)(further internal citations omitted). In borderline situations, the GRIDS should not be mechanically applied.  *See, e.g., Daniels v. Apfel*, 154 F.3d 1129, 1135 (10th Cir. 1998). When nonexertional limitations affect the range of activities that the claimant can participate in, the GRIDS can serve only as a framework to aid in determining whether sufficient jobs exist for a claimant, given his limitations and characteristics.  *Gossett ,* 862 F.2d  at 806.

In the instant case, the ALJ found that Mr. Cano "has the exertional residual functional capacity to perform substantially all of the seven primary strength demands required by work at the sedentary level of exertion."  R. 23 (citing Soc. Sec. Ruling 83-11 and Soc. Sec. R. 83-10) The ALJ also found that Plaintiff "has no significant nonexertional limitations."  R. 23.  Because only significant nonexertional impairments limit the claimant's ability to do the full range of work within a classification, and because Plaintiff's residual functional capacity, age, work experience, and education precisely match a GRID category, the ALJ did not err in applying the GRIDS to find Plaintiff was not disabled. *See Thompson*, 987 F.2d at 148;  *Gossett*, 862 F.2d at 806.

## CONCLUSION

I find that Plaintiff's Motion to Reverse and Remand for a Rehearing, filed November 26, 2002 *(Doc. 10)* is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse or Remand for a Rehearing filed November 26, 2002 *(Doc. 10)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

_____

**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**